Filed 8/27/15  Reed v. Ryan CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ALEXANDRA REED, | B253342 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. LC093212) |
| v. | |
| SAMANTHA RYAN, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Amy D. Hogue, Judge.  Affirmed.

Ross S. Heckmann for Plaintiff and Appellant.

Manning & Kass, Ellrod, Ramirez, Trestoer, Eugene J. Egan, Steven J. Renick and Marilyn R. Victor; Tseng & Associates and Jennifer Tina Tseng for Defendant and Respondent.

_____

Plaintiff Alexandra Reed appeals from the trial court's order vacating a default judgment in her favor and allowing defendant Samantha Ryan to file an answer. Plaintiff asserts the trial court abused its discretion in vacating and setting aside the default judgment. We conclude the trial court did not abuse its discretion and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Accident and Complaint*

On April 4, 2009, plaintiff was a passenger in the car defendant was driving when they were struck by a drunk driver. At the time, plaintiff and defendant were best friends and roommates. In March of 2010, defendant received a letter from plaintiff's lawyer, asking for defendant's insurance information and stating, "Clearly, you were not at fault in this accident." Plaintiff filed a complaint against defendant and the drunk driver on April 4, 2011.[1] The form complaint alleged that both defendant and the drunk driver were negligent and this negligence was the proximate cause of plaintiff's injuries, but made no specific allegations about defendant's actions. In contrast, plaintiff alleged the drunk driver recklessly operated his vehicle "in gross excess of the posted speed limit," drove on the wrong side of the street, failed to stop at a stop sign, and collided head on with defendant's vehicle.

When defendant received the complaint, she spoke with plaintiff who assured her the lawsuit was not about defendant and was only against the drunk driver. Plaintiff denies telling defendant "anything of the sort." Defendant forwarded the information to Sheri Manning, the attorney prosecuting her own action against the drunk driver. Manning then forwarded the letter to defendant's insurance carrier. For unknown reasons, the carrier, which had closed the claims file due to inactivity, failed to reopen the file, obtain counsel for defendant, and file a responsive pleading.

---

[1] Plaintiff served defendant and the drunk driver with the complaint on May 4, 2011.

## 2.     *Default*

At a hearing on August 22, 2011, counsel for the drunk driver represented to the court that plaintiff and the drunk driver had reached a settlement.  Ultimately, it took until October of 2012 to dismiss the case against the drunk driver.  While working out the settlement with the drunk driver, plaintiff entered a default against defendant on March 19, 2012, ten months after serving the complaint.[2]

## 3.     *Purported Agreement to Set Aside Default*

Manning contacted plaintiff's attorney in August 2012 to provide defendant's insurance information after default had been entered.  Manning states plaintiff's attorney at that time stipulated to set aside the default, saying, "all he ever wanted was the insurance information."  Manning contacted defendant's insurance carrier and explained the stipulation to set aside the default.  Manning asked the carrier to "take care of this aspect of the case immediately."  Defendant's insurance carrier reopened the claims file at that time.

On or about August 24, 2012, H. Daniel Burrows, an attorney retained by the insurance carrier to represent defendant, received part of the claims file regarding the default entered against defendant.  The file included the letter from Manning that referenced plaintiff's attorney's agreement to stipulate to set aside the default.  Burrows relied on the promised stipulation and let the six-month time frame for mandatory relief expire as he attempted to contact plaintiff's attorney about signing the stipulation.

## 4.     *Motion to Set Aside Default*

On September 21, 2012, defendant filed a motion to set aside the default pursuant to Code of Civil Procedure section 473, contending the entry of default resulted from defense counsel's mistake, inadvertence, surprise, or excusable neglect.  Specifically, she argued that her insurance carrier failed to timely answer the complaint and that counsel

---

[2]     If a responsive pleading is not served within the 30-day time period for response after service of the initial complaint and no extension of time has been granted, the plaintiff must file a request for entry of default *within 10 days* after the time for service has elapsed.  (Cal. Rules of Court, rule 3.110(g).)

3

subsequently failed to timely move to set aside the default, mistakenly relying on plaintiff's promise to stipulate to set it aside. In plaintiff's opposition to the motion, plaintiff's attorney stated he never agreed to stipulate to set aside the default. In defendant's reply, she asserted the complaint had not been filed in good faith; the plaintiff induced defendant to take no action to defend by writing a letter stating defendant was not at fault.

Defendant's motion to set aside the default was denied without prejudice. The court emphasized the motion was untimely and that the arguments of extrinsic fraud and promissory estoppel were "improperly raised in the reply in that such late address deprives plaintiff of the opportunity to respond." The court indicated, "Counsel may renew the application for relief WITHIN THE APPLICABLE TIME DEADLINES should plaintiff successfully obtain a default judgment."

5.    *Damages and Default Judgment*

In the brief to prove up damages, plaintiff contended "defendant Samantha Ryan was speeding and crossed over the 'center line' of the road, [and] as such, is at fault for this collision." This seemed at odds with the complaint that asserted the drunk driver was speeding and driving on the wrong side of the road. A default judgment was entered against defendant on March 13, 2013 for $1,100,478.84.[3]

6.    *Motion to Vacate Default Judgment*

Defendant filed a motion to vacate the default judgment on June 25, 2013. She argued the judgment was obtained by extrinsic fraud or mistake by alleging the "continued assurances of plaintiff . . . that this lawsuit was not about [her]" caused defendant to take no notice of court papers she received. Defendant also emphasized "the actions or inactions of [plaintiff's] attorney," concerning the alleged agreement to

---

[3]    Plaintiff had allegedly mailed a Statement of Damages to defendant and the drunk driver on July 21, 2011, but did not file proof of service. Plaintiff later filed proof of personally serving the statement of damages on April 13, 2012 – almost a month after default was entered. The statement listed a total of $600,478.84 in damages.

4

stipulate to set aside the default.  Defendant also attached a proposed answer to plaintiff's complaint.

The trial court granted defendant's motion to vacate the default judgment and allowed defendant to file her answer.  Plaintiff filed a timely notice of appeal.

## DISCUSSION

### A.    Standard of Review

Rulings granting relief on equitable grounds are reviewed for abuse of discretion. (*Parage v. Couedel* (1997) 60 Cal.App.4th 1037, 1041.)  Under this standard, the appellate court will only reverse when the trial court has "exceeded the bounds of reason."  (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478.)

### B.    The Trial Court Did Not Abuse Its Discretion in Vacating Default Judgment

A court may vacate a default judgment based on extrinsic fraud, a term covering " 'almost any set of extrinsic circumstances which deprive a party of a fair adversary hearing.' "  (*Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 833 (*Falahati*).)  Extrinsic fraud occurs when a defendant "was kept in ignorance or in some other manner, other than from his or her own conduct, fraudulently prevented from fully participating in the proceeding."  (*In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1068.)  A defendant seeking relief from a default judgment based on extrinsic fraud bears the burden of showing:  1) a meritorious defense; 2) a satisfactory excuse for failing to timely answer the complaint; and 3) reasonable diligence in seeking to set aside the default judgment once it was discovered.  (*Falahati*, at p. 833.)

#### 1.    Meritorious Defense

To show a meritorious defense, a defendant does not need to demonstrate with certainty that a trial would result in a judgment in the defendant's favor.  (*In re Marriage of Park* (1980) 27 Cal.3d 337, 346.)  Rather, a defendant "must show facts indicating a sufficiently meritorious claim to entitle her to a fair adversary hearing."  (*Ibid*.)

5

In *Rappleyea v. Campbell* (1994) 8 Cal.4th 975 (*Rappleyea*), the California Supreme Court held the defendant's unverified answer to the unverified complaint constituted a showing of a meritorious defense because it responded to the complaint's allegations. (*Id.* at p. 983.) In this case, defendant filed a proposed answer with her motion to vacate the default judgment in which she denied all allegations made in plaintiff's unverified complaint. This answer included the affirmative defense that plaintiff's injuries were caused by the drunk driver, not defendant. Moreover, defendant asserted in her declaration in support of the motion for relief from default judgment that the drunk driver crossed the center line and collided head on with her vehicle. These are the same allegations found in plaintiff's original complaint, though plaintiff's declaration to prove up damages claimed that it was defendant who crossed the center line and caused the accident. Like *Rappleyea*, defendant met plaintiff's unverified complaint with an unverified answer and plaintiff's declaration with a competing declaration. We observe no abuse of discretion on this element.

### 2.    Excuse

If a defendant failed to file a timely answer to a complaint due to reasonable reliance on statements or conduct of the plaintiff, a satisfactory excuse is established. (*Aheroni v. Maxwell* (1988) 205 Cal.App.3d 284, 291-292 (*Aheroni*).)

In *Davi v. Belfiore* (1957) 153 Cal.App.2d 325 (*Davi*), the defendant defaulted after relying on the plaintiff's assurances that the lawsuit was focused on another party. (*Id.* at pp. 326-327.) When the defendant received the complaint, he called the plaintiff, who told him that he had received it because he "was to be used as a witness," and that the plaintiff was only interested in being compensated by another party. (*Id.* at p. 326.) The trial court vacated the default judgment, finding that the judgment had been secured by extrinsic fraud. (*Id.* at p. 327.) The Court of Appeal affirmed. (*Ibid.*)

Like *Davi*, defendant relied on plaintiff's assurances the lawsuit was not about her. Moreover, the defendant not only received assurances from plaintiff personally, but also received a letter from plaintiff's attorney, stating that defendant was "[c]learly" not at fault in the accident. Defendant's reliance on these assurances was reasonable, especially

6

considering defendant was also a victim in the accident and was involved in her own litigation against the drunk driver. The existence of a satisfactory excuse was ultimately a dispute of fact, which the trial court acted within its discretion to resolve in favor of defendant.

### 3. Diligence

A defendant has six months after a default judgment is entered to seek relief under Code of Civil Procedure section 473, after which any motions must be directed to the court's inherent equitable power to grant relief. (*Aheroni, supra*, 205 Cal.App.3d at p. 290.) Here, defendant filed her motion to vacate the default judgment approximately three months after the judgment was entered, well within the six-month statutory limit, even though she was seeking equitable relief that would have been available beyond the six months. Still, plaintiff argues defendant was not diligent in seeking relief from the judgment.

A defendant's diligence must be weighed against the prejudice the plaintiff would suffer if the court sets aside the default. (*Falahati, supra*, 127 Cal.App.4th at p. 833.) Reduced prejudice to the plaintiff lessens the burden on the defendant to prove diligence. (*Rappleyea, supra*, 8 Cal. 4th at p. 984.) "As a general rule once a default has resulted in a judgment there is a high degree of prejudice to the plaintiff in vacating the default because it entails setting aside the judgment and disturbing the plaintiff's justifiable reliance on the award. Every case, however, must be judged on its peculiar circumstances." (*Falahati*, at p. 834, fn. omitted.) The "peculiar circumstances" of this case involve several delays on the part of plaintiff. Waiting ten months after filing the complaint to enter defendant's default suggests a lack of urgency to reach a judgment and supports the conclusion that plaintiff was not greatly prejudiced by the decision to try the case on its merits. (*Rappleyea*, at p. 984.)

Defendant's initial motion to set aside the default before the entry of the default judgment lessened plaintiff's reliance. The court denied the motion for being untimely but noted it could be brought later should plaintiff obtain a default judgment. Knowing

7

the possibility of a challenge prior to entry of the default judgment, plaintiff could not reasonably have developed an expectation that the judgment would go unchallenged.

Plaintiff's assertion of prejudice is also undermined for another reason; the amount of damages in the default judgment far exceeded the statement of damages plaintiff served on defendant. Defendants must be given actual notice of the specific amount of damages sought before a default is taken against them. (See *Becker v. S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 493 [holding that a prayer for compensatory damages "in excess of $20,000" was not adequate notice of the defendants' potential liability for $26,457.50].) Here, plaintiff served defendant with a statement of damages totaling $600,478.84, but obtained a judgment against her for $1,100,478.84. Plaintiff was not justified in relying on this judgment, which violated defendant's right to notice. (*Falahati, supra*, 127 Cal.App.4th at p. 834.)

Plaintiff argues in her reply brief that "there is no need" for plaintiff to show prejudice resulting from defendant's alleged lack of diligence because "defendant failed to meet her initial burden of showing reasonable diligence." However, defendant met this burden by acting within the statutory time limit. The trial court did not abuse its discretion by finding that defendant waiting three months to file the motion "was not so unreasonable as to warrant a denial of the motion particularly when viewed against the history of this action."

### 4. Plaintiff's Arguments Lack Merit

Plaintiff contends the trial court unfairly considered factors not raised in defendant's motion to set aside the default judgment.[4] The defendant sought to set aside the default judgment for extrinsic fraud or mistake relating to notice. (2CT 181). The trial court granted the motion to set aside, "because defendant Ryan was never on notice that there were significant claims pending against her or that Plaintiff was seeking

---

[4] A section of the trial court's opinion titled "Problems with the Default Judgment" points out that the judgment exceeds the amount of damages presented in the Statement of Damages, service of the Statement of Damages on defendant was untimely, and plaintiff failed to make out a prima facie case for liability and damages by submitting competent and admissible evidence.

significant damages against her." The trial court makes its reasoning clear – the default judgment was vacated on the basis of extrinsic fraud or mistake. In any event, the court's discussion of these problems was relevant to its finding that plaintiff was not prejudiced.

Plaintiff also argues the defendant only requested vacation of the default judgment, not the default itself. However, defendant requested permission to file an answer along with the motion to vacate the default judgment. Filing an answer would only be possible if the initial default was set aside. Both the defendant and the trial court understood defendant's motion as a request to set aside both the default judgment and the default. Plaintiff's own understanding of this request is made clear by plaintiff's opposition to defendant's motion to vacate the default judgment. In her attached memorandum, plaintiff argues, "[a]ssuming witnesses could still be located, and even if defendant . . . herself could even remember the details of the accident, Plaintiff . . . will unquestionably suffer prejudice if the present motion is granted." If plaintiff understood the motion as only a request to vacate the default judgment, and not to set aside the default, then plaintiff would have no reason to argue she was prejudiced by the difficulty in finding witnesses so long after the accident.

## DISPOSITION

The order vacating the default judgment is affirmed. Defendant shall recover her costs on appeal.

OHTA, J.[*]

WE CONCUR:


FLIER, ACTING P. J.                    GRIMES, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9