Filed 12/15/25  Margolis & Tisman v. Chen CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MARGOLIS & TISMAN LLP, | B333744 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. BC512773 |
| SHUN SHENG CHEN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Colin P. Leis, Judge.  Affirmed.

Blank Rome, Mike Margolis; Zee Law Group, Tappan Zee and Kimberly Sue Navarro Barrientos for Plaintiff and Respondent.

Kenner Law Group and Jason J.L. Yang for Defendant and Appellant.

_____

In April 2014, Margolis & Tisman LLP won a default judgment against Shun Sheng Chen.  Nearly ten years later,

Chen filed a motion to vacate this default judgment, claiming Margolis failed to serve him properly and used "bad addresses." The trial court denied Chen's motion and he appealed. We affirm. Substantial evidence supports the trial court's factual finding that Margolis personally served Chen and the court correctly found the judgment against Chen was not void. Statutory citations are to the Code of Civil Procedure.

I

Margolis had initially sued Chen and three related corporate defendants (Bountiful Biotech Corp., Bountiful Natural Healing, Inc., and King Shop International) in June 2013. Margolis hired Ace Attorney Service, Inc. to serve Chen.

In November 2013, Margolis filed a proof of service of summons, stating it had served Chen by substituted service. Margolis attached a declaration of due diligence from Ace, which reflected that Ace had made a total of nine attempts to serve Chen at two different addresses: the first address was 267 N. Quail Lane in Orange, and the second address was 3111 W. Lincoln Avenue Suite B in Anaheim. In most of the attempts, no one responded when the process server arrived at the address and knocked on the door.

The ninth attempt took place on November 14, 2013. At 10:55 a.m. that day, Ace employee Sidney Foster arrived at the Lincoln address and spoke with "Dr. Chen (Asian male, 5' 6", 5' 10", 140 lbs, Brown eyes, Glasses, Black/Grey hair)[,] who . . . while pointing at the name Shun Sheng, [] stated 'I don't go by that name.' " After the Asian male refused to state his full name, Foster left the lawsuit documents in his presence and mailed copies of the documents to the Lincoln address. In the proof of service form, Foster stated they served " 'John' Chen (Asian male,

2

56 yrs, 5' 10", 140 lbs, Brown eyes, Glasses, Black/Grey hair), Doctor."

In December 2013, Margolis filed an amended proof of service of summons. According to this amended proof of service, Foster personally served King Shop International by serving Chen, its director and CEO, on November 14, 2013 at the Lincoln address.

That same month, the court granted Margolis's request for the entry of a default against Chen. In April 2014, the court entered judgment in favor of Margolis and against Chen and the three corporate defendants, and ordered Chen to pay damages, prejudgment interest, and costs totaling over $92,000.

More than eight years later, in November 2022, the court granted Margolis's request to renew its judgment against Chen. By then, over $78,000 in postjudgment interest had accrued.

In August 2023, Chen received a notice of levy on his Bank of America account from the Sheriff's Department.

Soon thereafter, Chen filed a motion to set aside the default and default judgment under sections 473, subdivision (d) (section 473(d)) and 418.10. Chen included with his motion a sworn declaration stating he was not at the Lincoln address on the day Foster attempted service there, and that he was not the "Dr. Chen" Foster described in the due diligence declaration. Chen pointed out that he is "only 5' 4" tall" and the people Foster spoke to "were 5' 6" and/or 5' 10" tall" and that he was 63 years old in November 2013. Thus, Chen argued that Margolis did not properly serve him because although process server Foster claimed to serve him personally, the due diligence declaration showed "conflicting and/or inconsistent information." Chen

3

claimed he was unaware of Margolis's lawsuit against him until he received the notice of levy from the Sheriff's Department.

The next month, Margolis deposed Chen.

At the deposition, Chen admitted the Lincoln address was his wife's acupuncture office and that he visited this office occasionally. When Margolis's attorney asked how Chen knew he was not at the Lincoln address in November 2013, Chen responded that he was "most likely" not in the office because he travelled frequently to sell supplements and said "I'm pretty sure, most likely, I was not in the office." Chen further testified that the only "Dr. Chen" at the Lincoln address was his wife, Dr. Julie Chen.

Margolis's attorney showed Chen a printout from the California Acupuncture Board from July 2015. The printout included the following information:

    Licensee Name:  Chen Shun Sheng
    License Type:  Licensed Acupuncturist
    Expiration Date:  December 31, 2015
    Issue Date:  November 5, 2004
    Address:  3111B W Lincoln Ave
    City:  Anaheim
    State:  CA
    Zip:  92801
    County:  Orange

Chen admitted he was the licensee described in the printout and that he had given this Lincoln address to the California Acupuncture Board. He also testified he was aware that California law required him to provide the Board with a correct address to receive notices and information relating to his

4

acupuncture license. If there was mail for him at the Lincoln address, Chen said his wife would bring it to him.

When Margolis's attorney showed Chen the various proofs of service and asked if he had any reason to believe they contained false statements, Chen replied that they were false because the three companies he owned "were closed before 2010."

In Margolis's opposition to Chen's motion, it pointed out Chen's deposition testimony undermined his claim that Margolis never served him. Specifically, Chen could not credibly deny being at the Lincoln address in November 2013 and thus could not overcome the presumption of validity of service. Chen also never denied receiving the mailings of the court documents that were addressed to him personally.

The court held a hearing on Chen's motion in October 2023. After hearing argument, the court denied Chen's motion for failure to comply with the requirements of section 473.5. Specifically, the court found Margolis personally served Chen on November 14, 2013. Thus, as Chen did not file his motion until August 2023, his motion was untimely. Moreover, the court noted Chen's motion was substantively deficient because it failed to include an affidavit that any purported lack of notice did not result from his avoidance of service or inexcusable neglect, and did not include a copy of his proposed answer to Margolis's complaint.

## II

On appeal, Chen contends the trial court should have evaluated his motion under section 473(d), not section 473.5. Chen maintains that Margolis never personally served him and attacks the credibility of the process server, arguing the "critical flaw" in Margolis's proof of service is that he is only 5' 4", and the

discrepancy between his actual height and the description in the due diligence declaration shows the process server "mistakenly or knowingly served someone other than [Chen]."

The first step here is to examine the trial court's factual finding that Margolis personally served Chen on November 14, 2013.  We review this factual finding for substantial evidence. (*Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 828 (*Falahati*) ["On appeal from an order denying a motion for relief from default or a default judgment we will not disturb the trial court's factual findings where, as here, they are based on substantial evidence"].)

As Margolis points out, its filing of a sworn proof of service created a rebuttable presumption that service was proper.  (See *Lee v. Yan* 115 Cal.App.5th 975, 978 (*Lee*).)  This presumption is codified in section 647 of the Evidence Code.  Thus, Chen bore the burden of proving service was *not* proper.

The trial court found Chen failed to meet this burden and chose to believe the process server over Chen.  We defer to the trial court's finding that Chen was not credible, which has ample support in the record.  (See *Falahati*, *supra*, 127 Cal.App.4th at p. 828.)

Contrary to Chen's assertions, the Lincoln address was not "bad"; it was the address Chen's wife used for her medical office, the one he reported to the Acupuncture Board, and where he admitted to receiving mail.  The Lincoln address was thus a valid address to serve Chen.  (See *Lee*, *supra*, 115 Cal.App.5th at p. 978 [rejecting a defendant's attack on a process server's sworn declaration averring service on defendant's "usual place of business" where the defendant presented a "changing and incomplete story" of her whereabouts.])

Moreover, in his deposition, Chen also could not say with absolute certainty that he was not present at the Lincoln address when the process server averred they had personally served him. When Margolis asked Chen what made him certain that he was not at the Lincoln address on November 14, 2013, Chen replied: "Most likely, I was not in the office, just like I said. Reason number one, I travel a lot to sell supplements to support the family. Reason number two, [the Lincoln address], that was my wife's, Dr. Julie Chen's, clinic office. I went to her office only upon her request to do the range of motion treatment, rotation on, and massage on her patients. When that work was done, I left the office. And, by the way, the other reason is her clinic office was always locked in order to not let the homeless break in."

Chen points to the discrepancy between Chen's reported height of 5' 4" and the heights listed in the process server's due diligence declaration and the fact that he was 63, not 56 at the time of service. But these discrepancies are relatively minor in comparison to the substantial evidence supporting the trial court's finding of proper service. These height and age discrepancies are not sufficient to disprove or rebut the presumption that Margolis served Chen properly. (Cf. *American Express Centurion Bank v. Zara* (2011) 199 Cal.App.4th 383, 390–392 [no presumption of proper service where the proof of service "on its face indicates that the process server did not comply with the rules governing service"].)

Having found that substantial evidence supports the trial court's factual finding of proper service, we now address Chen's contention that the trial court erred by analyzing his motion under section 473.5, not section 473(d). We independently review

issues of statutory interpretation and application.  (See *Be v. Western Truck Exchange* (1997) 55 Cal.App.4th 1139, 1143.)  The trial court correctly determined section 473.5 was the correct avenue for Chen's motion.  Section 473(d) applies only to situations "where the judgment is 'void,' such as when the defendant has not been properly served."  (*California Capital Ins. Co. v. Hoehn* (2024) 17 Cal.5th 207, 215.)  But because Margolis *did* properly serve Chen, Chen's only avenue for relief was section 473.5(a), which applies when service is proper but the defendant did not receive actual notice.  (See *ibid.*)

To the extent Chen seeks to challenge the trial court's analysis under section 473.5, he forfeited any ability to do so by failing to make any arguments about section 473.5 before the trial court.  (See *Quiles v. Parent* (2018) 28 Cal.App.5th 1000, 1013 ["Failure to raise specific challenges in the trial court forfeits the claim on appeal"].)  Furthermore, any attempt to do so would be futile, as the record shows Chen failed to comply with section 473.5's requirements.  (See § 473.5, subds. (a) & (b).)

## DISPOSITION

We affirm and award costs to Margolis.

WILEY, J.

We concur:

STRATTON, P. J.          VIRAMONTES, J.

8