Filed 1/22/21  Alcocer v. City of Los Angeles CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| STEFANIE ALCOCER, | B296880 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC654793) |
| v. | |
| CITY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard L. Fruin, Jr., Judge.  Judgment reversed with directions.

McNicholas & McNicholas, Matthew S. McNicholas, Courtney C. McNicholas, Douglas D. Winter; Esner, Chang & Boyer, Stuart B. Esner and Andrew N. Chang for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Kathleen A. Kenealy, Chief Assistant City Attorney, Scott Marcus and Blithe S. Bock,

Assistant City Attorneys, and Matthew A. Scherb, Deputy City Attorney, for Defendant and Respondent.

_____

Plaintiff and appellant Stefanie Alcocer, an officer of the Los Angeles Police Department (LAPD), filed suit under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.) against defendant and respondent City of Los Angeles (the City), alleging that a coworker, Officer Harry Lathrop, subjected Alcocer to unwanted romantic advances and that the LAPD failed to respond adequately to Lathrop's behavior after Alcocer had reported it.  Although the caption of Alcocer's complaint against the City indicated that the complaint included three claims under FEHA—i.e., sexual harassment, discrimination, and retaliation—the body of the complaint contained separate headings only for the discrimination and retaliation causes of action.

The City moved for summary judgment or, in the alternative, summary adjudication on Alcocer's claims.  In its motion, the City addressed the merits of only Alcocer's claims for discrimination and retaliation, and argued that Alcocer had not pleaded a sexual harassment claim.  The trial court ultimately agreed with the City that Alcocer's complaint did not raise a claim of sexual harassment and granted the City's motion for summary judgment on the grounds there was no triable issue of material fact regarding whether:  Alcocer suffered an adverse employment action, the City had discriminatory intent, and there existed a causal nexus between Alcocer's complaints of sexual harassment and the City's alleged failure to investigate them.

On appeal, Alcocer argues, inter alia, that (1) her complaint did contain a sexual harassment claim, (2) the City failed to meet

2

its initial burden of production on the sexual harassment claim, and (3) the City was not entitled to judgment as a matter of law on Alcocer's discrimination and retaliation claims.

Although we acknowledge there is a discrepancy between the causes of action listed in the caption and those specified in the headings in the body of the complaint, we conclude that the pleading provided adequate notice to the City that Alcocer intended to assert a FEHA sexual harassment claim. To the extent this potential ambiguity did, in fact, cause any confusion, the City could have clarified the scope of Alcocer's complaint during the discovery process.

The City's motion, moreover, never challenged the evidentiary sufficiency of Alcocer's sexual harassment cause of action and, therefore, the burden did not shift to Alcocer to establish a triable issue of material fact on that claim in her opposition. On the other hand, Alcocer has not shown the trial court erred in concluding that she failed to establish a triable issue of material fact regarding whether she suffered an adverse employment action, which is a necessary element of her discrimination and retaliation causes of action. Accordingly, we reverse the judgment in favor of the City, vacate the order granting its motion for summary judgment, and remand to the trial court with directions to deny summary adjudication as to the sexual harassment claim but grant summary adjudication on Alcocer's discrimination and retaliation causes of action.

**FACTUAL AND PROCEDURAL BACKGROUND**

We summarize only those facts pertinent to this appeal. Immediately below, we also detail the allegations in the complaint given the City's contention that Alcocer did not plead a sexual harassment claim.

On March 20, 2017, Alcocer filed a complaint for damages against the City. The complaint alleges that Alcocer joined the LAPD as a police officer on or about September 30, 1996, and that she became a bomb technician in the LAPD Bomb Squad sometime in or after late 2008.[1] On or about April 20, 2016, Officer Lathrop, a fellow bomb technician who knew that Alcocer was a homosexual who had a same-sex partner, approached Alcocer while on duty and revealed that "he was 'madly in love' with her and had been in love with her for over six years." Lathrop later told Alcocer that he intended to leave his wife because of his "deep love" for Alcocer. "In response to Lathrop's revelation, Plaintiff told him she did not have any reciprocal feelings for him of a romantic nature, [and] that 'it was never going to happen[.]' Plaintiff told Lathrop to leave her alone and 'give her space[.]' "

Alcocer averred that "[b]eginning in or around April 20, 2016, and continuing on a daily basis thereafter, Officer Lathrop stalked Plaintiff, engaging in behavior that included, but was not limited to: he appeared at restaurants where Plaintiff was eating; he drove by her work detail/location when he was assigned to a different detail; he repeatedly and incessantly sent her emails and text messages; he bombarded her with telephone calls; he cornered her in an LAPD parking lot and when she refused to speak to him he became visibly angry and violently punched an LAPD truck; he contacted her co-workers and friends to elicit confidential, personal information about her whereabouts and her conversations; he appeared in public places while she

---

[1] The remainder of this paragraph and the following eight paragraphs summarize allegations from the complaint. We express no opinion as to the veracity of these allegations.

4

was on duty, including Los Angeles International Airport, and begged her to speak with him; he cried to her and pleaded that she permit him to drive her to training; [and] he followed her from her work detail to the training site." Additionally, at a work-related luncheon held on or about May 13, 2016, "Lathrop approached Plaintiff and forced himself upon her and kissed her. Plaintiff pushed him away."

"On or about June 9, 2016, [Alcocer] met with [her immediate supervisor, Bomb Squad Sergeant Mike] Salinaz in person. Plaintiff reported all of the harassment and unwanted advances of Officer Lathrop." "On or about June 10, 2016, Sgt. Salinaz sent [Alcocer] a te[x]t message stating that he had met with [Captain Cathy] Meek[, the commanding officer of the Bomb Squad,] as well as the Officer-In-Charge of Bomb Squad, Lt. II Richard Smith. Salinaz advised Plaintiff that Lathrop was supposed to 'stay away' from her."

In the months following Alcocer's initial report of harassment to Sergeant Salinaz, Alcocer and her supervisors discussed the prospect of making certain changes to Alcocer's schedule to prevent Lathrop and Alcocer from having contact with one another. On or about June 16, 2016, Alcocer requested that her schedule be arranged so that she was not scheduled to work certain details with Lathrop,[2] and on several occasions in July and August 2016, supervisors asked Alcocer to change her schedule and assignment to avoid having contact with Lathrop.

---

[2] In connection with this request to rearrange Alcocer's schedule, the complaint alleges: "This action had NOT been initiated by any supervisor in the Bomb Squad; [Alcocer] had to make a specific request not to work in partnership with her harasser."

5

On or about November 30, 2016, Lieutenant Smith told Alcocer he was " 'giving [Alcocer] the option' not to attend weekly unit meetings as Officer Lathrop would be attending the unit meetings." "On December 13, 2016, Lt. Smith told Plaintiff that if she planned to attend the Bomb Squad Christmas Party, she would have to leave no later than 12:30 p.m. 'because [Lathrop] has to have the opportunity to attend.' "

On or about July 18, 2016, Alcocer "advised Sgt. Salinaz that she could not tolerate being around Officer Lathrop at all[,] . . . requested that Lathrop's desk be relocated from next to hers to a different location," and stated that "Lathrop was violating Capt. Meek's order to 'stay away' from" Alcocer because "Lathrop found excuses to be in the office when she was there"; "[n]o actions were taken in response" to this complaint. Although supervisors "advised" Alcocer on or about August 20, 2016 that Lathrop would not be at the Bomb Squad office when Alcocer was present, Lathrop appeared at the office on August 23, 2016 "without a legitimate Bomb Squad business-related reason for doing so." While Lathrop was in the office on that date, he "repeatedly walked back and forth slowly behind Plaintiff who was seated at her desk."

On August 31, 2016, Alcocer again expressed "her acute discomfort in having to work around Lathrop," and Lieutenant Smith responded by "recommend[ing] that Plaintiff attend a 'mediation' with Lathrop" and advising Alcocer that her supervisors "were going to 'officially document things' with a Form 15.2 'Stay Away Order.' " Alcocer rejected the offer to attend mediation, stated that "the Form 15.2 'Stay Away Order' was not good enough[, and] repeated her fear of having Lathrop in the Bomb Squad."

On September 29, 2016 and November 1, 2016, Alcocer had two different interviews with Internal Affairs investigators at which she related her allegations against Lathrop; during the second interview, Alcocer stated that "she wanted Lathrop to leave the Bomb Squad and leave her alone." When Alcocer contacted the investigator assigned to the case on December 21, 2016 to determine "the status of her reports, the investigator replied that he had other cases and was very busy." "The investigator assured Plaintiff that he would 'begin interviewing' soon."

Alcocer spoke with Captain Meek on October 10, 25, and 29, 2016 about her allegations against Lathrop. On October 10, 2016, Captain Meek stated that Lathrop's behavior " 'does not rise to the level of misconduct' and [the Captain] refused to initiate a personnel complaint against Officer Lathrop." On October 25, 2016, Alcocer "reiterated the incident on the rooftop when Lathrop had cornered her and punched trucks."[3] On October 29, 2016, Captain Meek stated that "she had given Lathrop a written 'Stay Away' order and that their schedules would not intersect," and Alcocer responded that "the Bomb Squad was a small unit and that the damage had been done."

Although Lathrop was eventually removed from the Bomb Squad on December 26, 2016, Captain Meek "issued a direct order that Officer Lathrop's Bomb Squad equipment and gear 'was not to be reassigned' and that it was 'being stored for Officer

---

[3] While the complaint does not specify when this incident occurred, Alcocer claimed in her opposition to the City's motion that this event transpired on June 7, 2016.

7

Lathrop[.]'  Officer Lathrop was permitted to keep his City vehicle and telephone."

The body—as opposed to the caption—of Alcocer's complaint contains headings identifying only *two* causes of action:  "Discrimination in violation of FEHA, Cal. Gov't C. §§ 12940, et seq." and "Retaliation in violation of FEHA, Cal. Gov't C. §§ 12940, et seq."  (Some capitalization omitted.)  These two headings follow the section titled "General Allegations" and precede the prayer for relief.  (Some capitalization omitted.)  Conversely, *three* causes of action appear in the column to the right of the caption provided at the beginning of the pleading:  "1. Discrimination in Violation of FEHA [¶] (Cal. Gov't Code § 12940 *et seq.*) [¶] 2. Sexual Harassment in Violation of FEHA [¶] (Cal. Gov't Code § 12940 *et seq.*) [and] [¶] 3. Retaliation in Violation of FEHA [¶] (Cal. Gov't Code § 12940 *et seq.*)"

On April 17, 2017, the City filed an answer, which contained a general denial to "each and every allegation contained in the Complaint," and asserted various affirmative defenses.

On February 13, 2018, the City filed a motion for summary judgment or, in the alternative, summary adjudication on Alcocer's discrimination and retaliation causes of action.  The City argued that Alcocer's cause of action for discrimination failed because she had not suffered an adverse employment action, there was no evidence that any of the City's actions was based on her sexual orientation, and the City's actions "were based on personnel management decisions, which constitute legitimate, non-discriminatory reasons."

Similarly, the City contended that the retaliation claim failed because Alcocer had not suffered an adverse employment

8

action, and the City's actions "were based on personnel management decisions, which constitute legitimate, non-retaliatory reasons." Neither the City's notice of motion nor its supporting memorandum of points and authorities contended the City was entitled to judgment as a matter of law on a claim of sexual harassment. Instead, the City asserted: "Although the Complaint's caption claims to bring a third cause of action, the actual pleaded claims are for discrimination and retaliation, which as the only actionable claims are addressed by way of this Motion."

On January 4, 2019, Alcocer filed her opposition to the City's motion. Alcocer argued that "[t]he City's motion d[id] not address, challenge, or mention the ongoing, continuous, severe, and pervasive admitted sexual harassment of Plaintiff . . . by LAPD Officer Harry Lathrop[,] and the Department's retaliation against Plaintiff after she reported the harassment and the toxic environment that the Bomb Squad Command permitted to exist." Alcocer also intimated that if the trial court "construe[d her] pleading broadly," it would find that a claim of sexual harassment is "encompassed by the controlling pleading." She further contended there were triable issues of fact on her sexual harassment, discrimination, and retaliation claims.

Of particular relevance to the instant appeal, Alcocer claimed that "[t]he most egregious adverse [employment] actions [she suffered] were 1) permitting the hostile work environment to exist despite Plaintiff's repeated complaints and 2) refusing to take appropriate action as required by LAPD policy." Alcocer also complained that Lathrop was "given preferential treatment over Plaintiff" with regard to scheduling, assignments, and unit meetings. (Boldface & some capitalization omitted.)

9

On January 16, 2019, the City filed its reply brief, arguing, inter alia, that Alcocer could not add a cause of action for sexual harassment by way of her opposition papers.

On January 24, 2019, the trial court heard the City's motion. At the hearing, the court stated its belief that "[t]here are two causes of action" that "are labeled in the operative complaint," and "[h]arassment is not one of them." Alcocer's trial counsel responded that while the court was "correct that there was not a separately-labeled cause of action [for harassment] in the body of the complaint[,] that was a mistake, obviously, because it [is] in the caption" and the pleading's factual averments "allege each of the elements of a harassment cause of action under FEHA." The parties and the trial court thereafter discussed whether the City was entitled to judgment as a matter of law on Alcocer's retaliation and discrimination claims.

Later that day, the trial court issued a ruling granting the City's motion for summary judgment. The ruling did not address the merits of the claim of sexual harassment discussed in Alcocer's opposition because, "[w]hile the CAPTION on the pleading indicates that it includes a [second cause of action] for 'sexual harassment,' the body of the Complaint doesn't include any charging allegations re a harassment claim." (Boldface omitted.)

The trial court also ruled there were no triable issues of material fact on Alcocer's discrimination and retaliation claims because "Plaintiff's evidence [was] insufficient to demonstrate": Alcocer suffered an adverse employment action, the City's conduct was motivated by Alcocer's sexual orientation, and "a causal nexus between Plaintiff's complaining about harassment and the purported failure to investigate same." In particular, the

10

trial court rejected the following purported adverse employment actions identified by Alcocer: "[T]he CITY permitted a hostile work environment to exist[,] . . . it 'refused to take appropriate action as required by LAPD policy[,]' " and "Lathrop was given preferential treatment . . . ."

On February 20, 2019, the trial court entered a judgment in favor of the City and against Alcocer in accordance with the court's January 24, 2019 order granting the City's motion. Alcocer appealed the judgment on April 5, 2019.

## STANDARD OF REVIEW

Under Code of Civil Procedure section 437c, "[a] party may move for summary judgment in an action or proceeding if it is contended that the action has no merit or that there is no defense to the action or proceeding." (Code Civ. Proc., § 437c, subd. (a)(1).) Similarly, "[a] party may move for summary adjudication as to one or more causes of action . . . if the party contends that the cause of action has no merit . . . ." (*Id.*, subd. (f)(1).) "A motion for summary adjudication may be made by itself or as an alternative to a motion for summary judgment and shall proceed in all procedural respects as a motion for summary judgment. . . ." (*Id.*, subd. (f)(2).)

"A defendant . . . has met his or her burden of showing that a cause of action has no merit if the party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to the cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto. The plaintiff . . . shall not rely upon the allegations or denials of its pleadings to show that a triable

11

issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2); see also *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1250 (*Laabs*) ["[T]he moving party bears the initial burden of production to make a prima facie showing that no triable issue of material fact exists. Once the initial burden of production is met, the burden shifts to the responding party to demonstrate the existence of a triable issue of material fact."].)

"We review an order granting or denying summary judgment or summary adjudication independently. [Citations.] ' " 'First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond; secondly, we determine whether the moving party's showing has established facts which negate the opponent's claims and justify a judgment in movant's favor; when a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue.' " ' [Citation.]" (*Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 492 (*Los Angeles Unified School Dist.*).)

" ' "[D]e novo review [of a ruling on a motion for summary judgment and/or summary adjudication] does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues

12

which have been adequately raised and briefed." ' [Citation.]"
(See *Los Angeles Unified School Dist.*, *supra*, 57 Cal.App.5th at
p. 492.)

## DISCUSSION

The parties dispute whether Alcocer's complaint included a
sexual harassment claim to which the City needed to respond in
its motion, and, if so, whether the City was nonetheless entitled
to judgment as a matter of law on that claim. They also dispute
whether Alcocer established triable issues of fact on her
discrimination and retaliation causes of action.

As discussed in greater detail below, we conclude the trial
court erred in finding that the complaint did not raise a sexual
harassment claim against the City. Accordingly, the trial court
erred in granting summary judgment because the City failed to
discharge its initial burden to show that there were no triable
issues of material fact as to the elements of that harassment
claim. On the other hand, Alcocer fails to show that the trial
court erred in finding that there was no triable issue of material
fact as to the absence of an adverse employment action, and that
her discrimination and retaliation claims therefore failed as a
matter of law.

## A. The Trial Court Erroneously Ruled that Alcocer's Complaint Did Not Include a FEHA Sexual Harassment Cause of Action

" 'To create a triable issue of material fact, the opposition
evidence must be directed to issues raised by the pleadings.
[Citation.] If the opposing party's evidence would show some
factual assertion, legal theory, defense or claim not yet pleaded,
that party should seek leave to amend the pleadings before the

13

hearing on the summary judgment motion. [Citations.]' " (*Laabs*, *supra*, 163 Cal.App.4th at p. 1253.) "In assessing whether the issues raised by plaintiff in opposing summary judgment are encompassed by the controlling pleading, we generally construe the pleading broadly [citation]; but the pleading must allege the essential facts ' " 'with reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source and extent of [the] cause of action.' " ' [Citation.]" (*Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 585 (*Soria*); see also *id.* at pp. 585–586 [concluding that a plaintiff could not raise a FEHA claim of discrimination based on medical condition in her opposition to the defendants' summary judgment motion because "even viewing [her] pleading liberally, [plaintiff] did not allege discrimination based on medical condition sufficiently to put [defendants] on notice she was asserting" that claim].) This rule is intended to ensure that the parties are "acting on a known or set stage" such that "Code of Civil Procedure section 437c . . . ha[s] procedural viability." (See *Laabs*, *supra*, 163 Cal.App.4th at pp. 1258–1259, fn. 7.)

Construing the complaint broadly, we conclude that it put the City on notice that Alcocer was asserting a claim of sexual harassment under FEHA, notwithstanding the absence of a separate heading expressly identifying this cause of action in the body of the complaint. As we observed in the Factual and Procedural Background, the complaint alleges that beginning in April 2016, Officer Lathrop repeatedly subjected Alcocer to unwanted romantic advances; Alcocer first reported this behavior to Sergeant Salinaz on or about June 9, 2016; and the City's response to Alcocer's complaints was slow and inadequate.

Consequently, Alcocer arguably pleaded the elements of a hostile work environment sexual harassment claim.[4]  In light of these averments, and the fact the complaint's caption indicates that "Sexual Harassment in Violation of FEHA [¶] (Cal. Gov't Code § 12940 *et seq*.)" is one of the causes of action raised therein, we conclude that Alcocer "allege[d] the essential facts ' " 'with reasonable precision and with particularity sufficient to acquaint [the City] with the nature, source and extent of [Alcocer's FEHA sexual harassment] cause of action.' " ' "[5]  (See *Soria, supra,* 5 Cal.App.5th at p. 585.)

The City resists this conclusion, claiming that "[a] complaint's caption 'constitutes no part of the statement of the cause of action.' "  (Quoting *Falahati v. Kondo* (2005)

---

[4] (See *Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 283 ["[T]o establish liability in a FEHA hostile work environment sexual harassment case, a plaintiff employee must show she was subjected to sexual advances, conduct, or comments that were *severe enough or sufficiently pervasive to alter the conditions of her employment and create a hostile or abusive work environment*."]; Gov. Code, § 12940, subd. (j)(1) ["Harassment of an employee . . . shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action."].)

[5] The issue here is not whether the complaint sufficiently states a cause of action for sexual harassment.  As the City itself argues, before us is a summary judgment motion and not a motion for judgment on the pleadings.  Under *Soria* and *Laabs*, the proper inquiry is whether the complaint gave the City sufficient notice that Alcocer intended to raise a sexual harassment claim.  As set forth in our discussion, we conclude that it did.

15

127 Cal.App.4th 823, 829 (*Falahati*).)  The City's reliance on *Falahati* is misplaced.

There, the Court of Appeal reversed an order denying a defendant's motion to vacate a default judgment in part because the operative complaint failed to state a cause of action against that defendant.  (See *Falahati*, *supra*, 127 Cal.App.4th at p. 829.)  The appellate court reasoned that the pleading did "not allege any conduct on [defendant's] part caused any harm, loss or damage on the plaintiffs' part."  (See *ibid*.)  The operative complaint thus violated Code of Civil Procedure section 425.10, subdivision (a), which provides that " '[a] complaint . . . shall contain . . . [a] statement of the facts constituting the cause of action, in ordinary and concise language.' "  (See *Falahati*, at p. 829, fn. 4.)  The court further concluded that the following did not cure this pleading deficiency:   "[A] boilerplate allegation [that] each defendant was the agent and employee of the others[,] . . . some charging allegations respecting 'defendants and each of them[,]' " and the inclusion of the defendant's name in the caption.  (See *id*. at p. 829.)

Thus, the quotation from *Falahati* upon which the City relies in fact supports only the unremarkable proposition that simply adding a defendant's name to the caption does not satisfy the statutory requirement that the complaint contain the *facts* constituting the cause of action.  *Falahati* had no occasion to consider whether the complaint's caption may be considered in conjunction with the pleading's factual allegations in order to ascertain which *legal* theories a plaintiff intends to raise and whether a defendant had fair notice of those claims.

In addition, the City cites *Belasco v. Wells* (2015) 234 Cal.App.4th 409, and *Kelecheva v. Multivision Cable T.V.*

16

*Corp.* (1993) 18 Cal.App.4th 521, for the proposition that "courts look to the actually-pleaded causes [of action] in the complaint's body, not those merely listed on a caption page" to "determine, on summary judgment, what causes of action are specified expressly." In those decisions, the Court of Appeal merely noted in passing that particular claims identified in the complaints' caption were not reasserted in the body of those pleadings. (See *Belasco, supra,* 234 Cal.App.4th at p. 413, fn. 4; *Kelecheva, supra,* 18 Cal.App.4th at p. 525, fn. 1.) In contrast, here, Alcocer's pleading is replete with allegations of sexual harassment, in addition to reference to the claim in the caption. All that was missing was a heading. We fail to discern how *Belasco* and *Kelecheva* are instructive on the issues before us. (See *Belasco* at pp. 413, 419 [discussing whether the plaintiff's claims were barred by a settlement agreement]; *Kelecheva* at pp. 524–525 [addressing whether the plaintiff's claims fell within the exclusive jurisdiction of the National Labor Relations Board under the federal preemption doctrine].) Accordingly, these decisions are of no assistance to the City.

Admittedly, the fact that Alcocer's trial counsel identified a cause of action for sexual harassment on the caption page but failed to include a heading for it in the body of the complaint could create a potential ambiguity in the pleading. Nevertheless, the City indicated that it was aware of this discrepancy in the pleading when it stated the following in its memorandum of points and authorities in support of the motion: "Although the Complaint's caption claims to bring a third cause of action, the actual pleaded claims are for discrimination and retaliation, which as the only actionable claims are addressed by way of this Motion." Indeed, at Alcocer's deposition, which was conducted

17

months before the filing of the instant motion, the City's trial counsel pursued several lines of inquiry related to Alcocer's claim of sexual harassment, including when she had first reported Lathrop's behavior to a supervisor and whether she believed that the LAPD's response to that behavior was adequate.  Insofar as the City was genuinely unsure as to whether Alcocer was leveling a sexual harassment claim against it, the City could have eliminated any such uncertainty during the discovery process. (See *A.J. Fistes Corp. v. GDL Best Contractors, Inc.* (2019) 38 Cal.App.5th 677, 695 [" ' "[W]here a complaint is in some respects uncertain, . . . ambiguities can be clarified under modern discovery procedures." ' "]; cf. *Soria*, 5 Cal.App.5th at pp. 586–587 [concluding that "[i]t was [defendant's] obligation through discovery to learn the factual grounds for [a particular] theory of liability," even though that theory was supported by only "vague, generalized assertions" in the complaint].)  The City's apparent failure to conduct discovery on this issue does not warrant taking away Alcocer's day in court on her sexual harassment claim.

Finally, the City argues that although a paragraph in the complaint alleges the City violated Alcocer's "rights under both state and federal law, including but not limited to the Fair Employment and Housing Act (Cal. Gov't C. §§ 12940, *et seq*.)" and is "liable for retaliation in violation of public policy" and "may be liable for constructive discharge," "[n]o one suggests . . . the City had to oppose summary judgment on all possible state and federal law theories simply because they were mentioned before the enumerated causes of action."  The City apparently argues that the inclusion of this paragraph in the pleading demonstrates that its reference to a sexual harassment cause of

18

action in the caption was merely a holdover "from a shell pleading."

This argument borders on hyperbole. Alcocer's caption does not include a non-FEHA cause of action; it does include a FEHA sexual harassment claim, which is supported by many specific factual allegations in the body of the pleading. The City acknowledges in its appellate briefing that Alcocer's complaint does not plead a constructive discharge claim because she does not allege she left her job, and, according to the City, she could not have asserted a common-law claim because "a plaintiff cannot allege a non-statutory cause of action against a municipality." Thus, while it is arguable that any references to such non-FEHA claims in the complaint were "derive[d] from a shell pleading," Alcocer's FEHA sexual harassment claim cannot be tarred with the same brush.

## B. The City Failed to Meet Its Initial Burden to Show the Absence of a Triable Issue of Material Fact as to Alcocer's Sexual Harassment Claim and the Trial Court Thus Erred in Granting Summary Judgment

As set forth in the Factual and Procedural Background, the City's motion did not address the merits of Alcocer's sexual harassment claim because it thought, albeit incorrectly, that claim was nowhere in the operative pleading. Accordingly, Alcocer argues the City did not satisfy its initial burden to show the absence of a triable issue of material fact regarding her sexual harassment claim and "it was [thus] inappropriate [for the trial court] to grant summary judgment as to that claim, even without any showing in opposition by" her. The City's appellate briefing apparently ignores Alcocer's argument regarding the City's initial burden, but instead maintains that "Alcocer's

19

evidence in opposition to the City's motion does not support the [sexual harassment] claim."

We agree with Alcocer that the City failed to meet its initial burden of production, under which it was required to " ' " ' "show[ ] the [trial] court that [Alcocer] 'has not established, and cannot reasonably expect to establish,' " the elements of . . . her cause of action[,]' " ' " and that, as a consequence, the burden did not "shift[ ] to [Alcocer] to demonstrate, by reference to specific facts, . . . there is a triable issue of material fact as to the cause of action." (See *Soria*, *supra*, 5 Cal.App.5th at pp. 582–583.) Accordingly, we reverse the trial court's grant of summary judgment without considering whether the evidence Alcocer offered with her opposition was sufficient to establish a triable issue of material fact on her sexual harassment cause of action. (See *id.* at pp. 586–587 [holding that a defendant's failure to address a cause of action in its moving papers was "fatal to its effort to obtain summary judgment/summary adjudication as to th[at] claim"].) We express no opinion on the merits of her sexual harassment claim at trial or upon a subsequent dispositive motion, if any.

## C. Alcocer Fails to Demonstrate the Trial Court Erred in Concluding There Are No Triable Issues of Material Fact on Her Discrimination and Retaliation Causes of Action as to the Essential Element of an Adverse Employment Action.

"To establish a prima facie case for unlawful discrimination [under FEHA], a plaintiff must provide evidence that '(1) he [or she] was a member of a protected class, (2) he [or she] was qualified for the position he [or she] sought or was performing competently in the position he [or she] held, (3) he [or she]

20

suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive.' " (See *Soria*, *supra*, 5 Cal.App.5th at pp. 583–584.)

Likewise, an adverse employment action is an essential element of a claim of retaliation under FEHA. (*Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1192–1193.) Specifically, " '[e]mployees may establish a prima facie case of unlawful retaliation by showing that (1) they engaged in activities protected by the FEHA, (2) their employers subsequently took adverse employment action against them, and (3) there was a causal connection between the protected activity and the adverse employment action.' " (*Ibid*.)

In her opening appellate brief, Alcocer asserts the City was not entitled to judgment as a matter of law on her discrimination and retaliation claims in part because she had proffered evidence showing she suffered the following purported adverse employment actions: "1) [the City] permitt[ed] the hostile work environment to exist despite [her] repeated complaints[;] . . . 2) [the City] refus[ed] to take appropriate action as required by LAPD policy"; and 3) Lathrop "was given preferential treatment over" Alcocer with regard to schedules, work assignments, and attendance at work-related events (e.g., unit meetings).

The City challenges the first purported adverse employment action, arguing Alcocer "had virtually no contact with Lathrop" after she first reported his inappropriate behavior to Sergeant Salinaz, and Alcocer saw Lathrop in the main downtown office on only "a 'few,' sporadic occasions" during that timeframe. Alcocer does not respond to this argument at all in

21

her reply brief, and she did not anticipate and address this contention in her opening brief. Alcocer thus "impliedly concedes" that the City is correct on this point. (See *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90 [concluding that the appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point."]; see also *Ortiz v. Dameron Hospital Assn.* (2019) 37 Cal.App.5th 568, 582 [" '[A]n employee claiming harassment based upon a hostile work environment must demonstrate that the conduct complained of was severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their [protected status].' [Citation.]"].)

In its ruling on the City's motion, the trial court expressly rejected Alcocer's other two asserted adverse employment actions concerning the LAPD's alleged failure to follow its own policies and its supposed preferential treatment of Lathrop. Alcocer does not explain why—let alone cite any authority demonstrating that—this aspect of the trial court's ruling was erroneous. She thus waives any appellate challenge to that decision. (See *Los Angeles Unified School Dist.*, *supra*, 57 Cal.App.5th at p. 492 [" 'As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.' "]; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" 'Appellate briefs must provide argument and legal authority for the positions taken. . . . The absence of cogent legal argument or

22

citation to authority allows this court to treat the contention as waived.' "].)

For the foregoing reasons, we find that Alcocer has not shown the trial court erred in ruling that she failed to establish a triable issue of material fact on this essential element of her discrimination and retaliation claims. Thus, upon remand, the trial court should grant summary adjudication in favor of the City on these two causes of action.

## DISPOSITION

The judgment in favor of City of Los Angeles is reversed, and the matter is remanded to the trial court with directions to vacate the order granting summary judgment and enter a new order denying summary adjudication as to Stefanie Alcocer's sexual harassment cause of action and granting summary adjudication as to her discrimination and retaliation causes of action. The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.


BENDIX, J.


We concur:



ROTHSCHILD, P. J.            FEDERMAN, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

23